COURT OF APPEALS OF VIRGINIA

Present: Judges Raphael, Lorish and Bernhard
Argued at Christiansburg, Virginia

**PUBLISHED**

JENNIFER MAY MATHESON

OPINION BY
v.      Record No. 1530-23-3      JUDGE DAVID BERNHARD
OCTOBER 28, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
Josiah T. Showalter, Jr., Judge

Paul G. Beers (Glenn, Feldmann, Darby & Goodlatte, on briefs), for
appellant.

J. Brady Hess, Assistant Attorney General (Jason S. Miyares,
Attorney General, on briefs), for appellee.

By order of August 25, 2023, the circuit court found Jennifer May Matheson in violation

of her probation, revoked her remaining suspended sentence, and resuspended all but six months

of her sentence. Matheson appealed this ruling, contending that the circuit court violated Code

§ 19.2-306.1 and abused its discretion in imposing an active six-month sentence for a first

technical violation of her probation.[1] The Commonwealth concedes that the circuit court erred in

imposing incarceration for a first technical violation but contends that Matheson's appeal is

moot, as the sentence has been served.

Upon consideration, this Court finds that the appeal remains justiciable because the

sentence imposed resulted in a $25 statutory assessment inseparably linked to the six-month term

---

[1] Initially, Matheson's counsel filed a brief and a motion to withdraw under *Anders v. California*, 386 U.S. 738 (1967). By order of February 18, 2025, this Court determined that the case was not wholly frivolous, relieved her court-appointed counsel, appointed new counsel, granted the parties leave to file amended briefs, and directed the parties to address "[w]hether Matheson's six-month sentence was permissible under Code § 19.2-306.1."

of incarceration. As that fee stems from an unauthorized sanction, it cannot stand and there is something left for this Court to do. The Court further concludes that the circuit court exceeded its authority by imposing a term of incarceration in contravention of Code § 19.2-306.1(C), which prohibits active confinement for a first technical violation. Accordingly, the judgment of the circuit court is reversed, and the matter is remanded with instructions to resentence Matheson to no jail time, consistent with Code § 19.2-306.1(C) and to refund the $25 jail admission fee.

BACKGROUND

On October 8, 2021, Matheson pleaded guilty under a plea agreement to possession of a Schedule I or II controlled substance. The Commonwealth agreed to nolle prosequi a second count of possession of a Schedule I or II controlled substance in exchange for Matheson's plea. The circuit court entered an order on October 28, 2021, deferring disposition of the case for one year under Code § 18.2-251. The order placed Matheson under one year of supervised probation with New River Valley ASAP.

On September 30, 2022, Matheson's ASAP case manager reported that she had tested positive for marijuana on September 26, 2022. The case manager requested a review of ASAP's supervision of Matheson's probation. After a hearing, the circuit court directed that Matheson's probation be supervised by Adult Probation and Parole and that, as a condition of her probation she reside at her marital home in Christiansburg.

By major violation report (MVR) dated February 8, 2023, Matheson's probation officer informed the court that, according to Matheson's husband, Matheson left the marital home on January 30 and had not returned. Several subsequent attempts to locate Matheson proved unsuccessful. Accordingly, the MVR cited Matheson for a violation of Condition 6 of her probation requiring her to follow the probation officer's instructions and "be truthful, cooperative, and report as instructed."

- 2 -

At a hearing on March 24, 2023, the circuit court accepted Matheson's guilty plea on the drug charge and sentenced her to three years in prison, with all but one month suspended. The court ordered Matheson to complete three years of supervised probation.

On July 17, 2023, Matheson's probation officer issued a second MVR. The MVR stated that on June 6, 2023, Matheson reported to probation that she was no longer living at her marital home, but she refused to provide her current address. Further, Matheson disregarded the officer's instruction to report on June 8, 2023. The MVR charged that Matheson had again violated Condition 6 of her probation.

The circuit court held a revocation hearing on August 11, 2023. The sentencing revocation report (SRR) for that hearing noted that Matheson was charged with violating Condition 6 of her probation as a first technical violation. The SRR reflected a sentencing guideline range from time already served to six months of incarceration, which was crossed off.

After Matheson pleaded no contest to the violation, her probation officer, Kimberly Powers, testified about Matheson's conduct while on probation. In part, Powers stated that she had instructed Matheson, who had left her marital home, to report to the probation office on June 7, 2023. When Matheson said that was too short notice for her "to make transportation," Powers directed her to report on June 8, 2023. But Matheson failed to report, and Powers had no further contact with her thereafter. Powers stated that Matheson had been receiving psychiatric treatment at Carilion at one time, but Powers did not know if she had "been receiving those services since." Powers believed that Matheson "does need help."

Matheson testified that she was currently enrolled with Carilion's mental health services and intended to follow through with those services. She said she intended to meet her probation officer regularly. On cross-examination Matheson disputed Powers's claim that she had not been in touch or provided her current address. Matheson stated that she would "provide a physical

address of contact for [Powers]. And have done so." When asked if she would willingly participate in the New Life program if the court ordered it, she responded, "I will not."

The circuit court found that Matheson had violated the terms of her suspended sentence. During allocution, Matheson inquired if she would be charged with a technical violation, which prompted her attorney to assert to the judge, "This is technical. First offense technical." Matheson's lawyer did not then press the point with more argument. The circuit court revoked Matheson's two-year and eleven-month suspended sentence and resuspended all but six months. Matheson then attempted to address the court further, stating, "I don't mean to interrupt you, but you . . . ." The court then stopped her, responding, "No, you're not going to say anything else, ma'am." In sentencing Matheson, the judge stated that he was extending her probation indefinitely and cautioned her, "You come back before me again, you're going to pull the remainder of your time." Then, notwithstanding the observation of the assistant Commonwealth's attorney that the sentencing guidelines did not "reflect the statutory limitation as far as a first technical violation," the judge confirmed that he was sentencing Matheson to an active term of six months pursuant to Code § 19.2-306.1(B).

The circuit court entered a revocation order, as amended on October 6, 2023, revoking Matheson's sentence of two years and eleven months, resuspending two years and five months. On the SRR, in the space provided for the circuit court to note its reason for departure from the sentencing guidelines, the judge wrote, "§ D applied." This appeal followed.

ANALYSIS

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

Matheson's appeal presents two questions. First, if error occurred, does Matheson's challenge to the revocation sentence survive review or has it become moot? Second, did the circuit court abuse its discretion in imposing a six-month term of incarceration? We proceed to answer those questions in turn.

*I. Matheson's appeal is not moot.*

In its initial brief, the Commonwealth asserts that this appeal is moot because Matheson is no longer incarcerated as a result of the sentence imposed at the revocation hearing. The Commonwealth provided this Court with a supplementary notarized affidavit from the records manager of the jail where Matheson served her sentence; the jail's records show that Matheson's incarceration for the sentence imposed for her revocation ended on November 6, 2023.

"[A] case is moot and must be dismissed when the controversy that existed between litigants has ceased to exist[.]" *Commonwealth v. Browne*, 303 Va. 90, 91 (2024) (alterations in original) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452 (2013)). "Whenever it appears . . . that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case." *Id.* (alteration in original) (quoting *Daily Press, Inc.*, 285 Va. at 452). As the Supreme Court of Virginia has explained, "an 'action that involves a live controversy at its inception may become moot during the course of litigation.'" *Id.* (quoting *Berry v. Bd. of Supervisors*, 302 Va. 114, 129 (2023)). "In some cases, '[c]hanging events during litigation may make it impossible for a court to award a litigant the relief requested." *Id.* at 91-92 (alteration in original) (quoting *Berry*, 302 Va. at 129).

This Court invited supplemental briefing on mootness.

Matheson's counsel filed a supplemental brief wherein he averred:

> The circuit court imposed the $25.00 jail processing fee upon
> Matheson when it entered its Amended Revocation Order of

October 6, 2023. Along with exceeding its statutory authority by locking up Matheson, the court in that Amended Revocation Order also mandated that she ". . . shall pay fines and costs by setting up a payment plan with the Clerk's office." (R. 108.) Those "costs" include the jail processing fee allowed by VA. CODE ANN. § 15.2-1613.1. Attached as Exhibit A is a copy of the Circuit Court of Radford City Form CC1350 defense counsel received from the lower court's Clerk on August 18, 2025, documenting the $25.00 assessment. (The handwritten annotations are those of the Clerk or her deputy.)

Exhibit A includes a line item, "Jail Admission Fee" followed by "$25" and an entry in the "state code" column of "234." In addition, the clerk of the circuit court provided a Form CC-1351, "Clerk's Notice of Fines and Costs" issued to Matheson. At oral argument, the parties stipulated that the form submitted by Matheson's counsel pertains to Matheson, that she paid the fee referenced in the form, and that the document is part of the record before this Court. Form CC-1351 in parallel reflects Matheson was charged the $25 fee, the entry being identified with the code "234," which identifies the "Jail Admission Fee."

In its supplemental brief, the Commonwealth responded to Matheson's contention as follows:

> The costs and fees associated with appellant's incarceration, which in this case are only those authorized by Code § 15.2-1613.1, do not change the mootness of this appeal since Matheson has only challenged her sentence, not her probation revocation. Leading up to her probation revocation, Matheson was held in custody on a capias for violating her probation. . . . Any fee imposed on Matheson pursuant to Code § 15.2-1613.1 would arise from "her admittance into the jail" and being incarcerated prior to her August 11, 2023 probation revocation. The revocation made Matheson liable for that fee. Therefore, regardless of whether Matheson's sentence is overturned on appeal, she remains obligated to pay a jail admittance fee as a result of her probation revocation.

"An appellate court may consider extrinsic evidence that is not already part of the record when considering whether a case has become moot during the pendency of an appeal." *Browne*, 303 Va. at 92. Thus, in determining whether this appeal is moot, this Court considers the

- 6 -

Commonwealth's notarized affidavit confirming that Matheson has served her sentence, along with Form CC-1350, submitted by appellant, reflecting the $25 jail admission fee.

Code § 15.2-1613.1 states in relevant part:

> Any county or city may by ordinance authorize a processing fee not to exceed $25 on any individual *admitted* to a county, city, or regional jail *following conviction*. The fee shall be ordered as a part of court costs collected by the clerk, deposited into the account of the treasurer of the county or city and shall be used by the local sheriff's office to defray the costs of processing arrested persons into local or regional jails.[2]

(Emphases added). Here, "conviction" refers to the legal adjudication of guilt that forms the basis for imposing incarceration and consequently the jail processing fee on individuals admitted to a county, city, or regional jail following entry of judgment.

The Commonwealth misreads the statute. Its interpretation reverses the statutory sequence by asserting the fee arose from Matheson's mere "admittance into the jail" on a capias, combined with the *subsequent* probation revocation. Under that view, anyone arrested and held temporarily, even if no active time is imposed upon revocation, would incur the fee. By contrast, an individual brought in on a rule to show cause who has probation revoked but is ordered to serve only suspended time would not be subjected to the assessment. That interpretation effectively transforms the obligation into a pretrial detention fee.

But the statute does not permit such a result. It authorizes the fee only when a person is "admitted to . . . jail *following* conviction." Code § 15.2-1613.1 (emphasis added). The trigger is a sentencing order that imposes confinement, whether the time is to be served prospectively or credited as time already served. This is in accord with a 2011 formal advisory opinion by then Attorney General, Kenneth T. Cuccinelli, II, wherein he stated the following:

> To assess the fee, it is not sufficient that the individual was admitted to the jail *before* conviction. Rather, the individual must

---

[2] This authority is implemented in City of Radford Ordinance § 35-58(a).

be "admitted to jail . . . following conviction." In situations where an individual spent some time in jail pretrial, but is not sent back to the jail "following conviction," either because his sentence did not involve any jail time, he received a suspended sentence, or he was sentenced to time served, the individual is not "admitted to the . . . jail *following* conviction" and no fee can be assessed.

2011 Op. Va. Att'y Gen. 87, 88. The Assistant Attorney General conceded he was unaware of the existence of the opinion until in the midst of oral argument. This opinion has not been amended or withdrawn by subsequent Virginia Attorneys General. "The legislature is presumed to have had knowledge of the Attorney General's interpretation of the statute[], and its failure to make corrective amendments evinces legislative acquiescence in the Attorney General's view" when the opinion has been extant as long as this one, and is "particularly" to be afforded "due consideration." *Beck v. Shelton*, 267 Va. 482, 492 (2004) (quoting *Browning-Ferris, Inc. v. Commonwealth*, 225 Va. 157, 161-62 (1983); *Twietmeyer v. City of Hampton*, 255 Va. 387, 393 (1998)). In relying on legislative acquiescence, the Supreme Court in *Beck* noted that five years had passed since the Attorney General's opinion, *id.*, far less than the dozen years in Matheson's case that passed between the Attorney General's Opinion and the judge's sentencing order.

The assessment of the $25 fee under the authority of Code § 15.2-1613.1 thus operates forward from the imposition of an incarceration sentence, not retrospectively from pretrial detention. That is how the Supreme Court of Virginia, through the Office of the Executive Secretary, implements the fee. The Circuit Court Clerk's Manual identifies the fee (with internal account code 234) as a "Jail Admission Fee - *Admittance* to county, city, or regional jail *after conviction*." Office of the Exec. Sec'y, Supreme Court of Va., *Circuit Court Clerk's Manual – Criminal*, Appendix C: Circuit Court Fees 84 (rev. July 2025) (emphases added).

Accordingly, if Matheson's sentence to a period of incarceration was erroneous, she should not have incurred a jail admission fee. While we cannot undo a wrongfully imposed

- 8 -

period of incarceration that has already been fully served, we may remand the matter to ensure a refund of any fee assessment that was improperly imposed by the circuit court.

## II. *The circuit court abused its discretion in sentencing Matheson to active incarceration.*

Revocation of a suspended sentence is committed to the discretion of the circuit court, but that discretion is circumscribed by statutory limits. When a circuit court imposes a sentence contrary to statute, it commits legal error. Whether the circuit court had authority to impose six months of active incarceration for a first technical violation is solely a question of law. *See Commonwealth v. Delaune*, 302 Va. 644, 655 (2023) ("Matters of statutory interpretation present pure questions of law, which are reviewed de novo on appeal.").

The circuit court's decision to impose six months of active incarceration on Matheson for a first technical violation of probation constituted an abuse of discretion because it violated the clear statutory limits in Code § 19.2-306.1(C). Although a circuit court generally has discretion to revoke a suspended sentence, that discretion is expressly constrained by the General Assembly's restrictions. The question before this Court, reviewed de novo, is whether the circuit court possessed the authority to impose a term of incarceration in this case.

The General Assembly established two categories of probation violations in Code § 19.2-306.1. Subsection A defines "technical violations" to include a probationer's failure to follow the probation officer's instructions, be truthful and cooperative, and report as required. Subsection C categorically prohibits active incarceration for a first technical violation. Subsection B, in contrast, applies only when a probationer incurs a new conviction, commits a non-technical violation, or violates the good conduct condition. By this statutory scheme, the legislature made clear that courts lack authority to impose active time for a first technical violation.

Before Matheson could be adjudicated in violation of probation, she was entitled to "*written notice of the claimed violations*." *Price v. Commonwealth*, 51 Va. App. 443, 446-47 (2008) (emphasis added) (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). That written notice to Matheson of the claimed violations was satisfied via the MVR. The record here shows that Matheson was charged *exclusively* with violating Condition 6 of her probation: the duty to follow her probation officer's instructions and to be truthful and cooperative. The SRR classified the violation as a first technical violation. At the revocation hearing, both Matheson and her defense counsel confirmed that this was a "first offense technical" violation, and the prosecutor reminded the court that the sentencing guidelines did not reflect the statutory bar on incarceration for such an offense. Despite this, the circuit court imposed six months of incarceration and, when pressed, insisted that it was sentencing Matheson under subsection B of Code § 19.2-306.1 rather than subsection C. This misclassification constituted clear legal error. The allegations in the charging MVR did not support application of subsection B because Matheson was not accused of committing a new criminal offense, a non-technical violation, or a good-conduct violation.

In the SRR, the judge stated "§ D applied" as an alternate justification for imposing time on Matheson.[3] That section reads as follows:

> The limitations on sentencing in this section shall not apply to the extent that an additional term of incarceration is necessary to allow a defendant to be evaluated for or to participate in a court-ordered drug, alcohol, or mental health treatment program. In such case, the court shall order the shortest term of incarceration possible to achieve the required evaluation or participation.

Code § 19.2-306.1(D). But that subsection does not apply to Matheson because it authorizes incarceration only to facilitate a defendant's evaluation for, or participation in, a court-ordered

---

[3] "The failure to follow any or all of the provisions of" the sentencing guidelines is "not . . . reviewable on appeal." Code § 19.2-298.01(F). Thus, this Court looks to the notation in the SRR merely as a guide to whether there are facts in the record that support the circuit court's sentencing revocation order.

- 10 -

drug, alcohol, or mental-health treatment program, and then only when incarceration is necessary to accomplish that purpose. *Id.* The court's sentencing revocation order does not reflect any referral to such a program, let alone the need for the evaluation to be done while Matheson was incarcerated.

The court erred in giving Matheson an active incarceration sentence. In *Commonwealth v. Delaune*, the Supreme Court made clear that "[a] court may not impose a term of active incarceration based on a first technical violation." 302 Va. at 656; *see also Henthorne v. Commonwealth*, 76 Va. App. 60 (2022) (reversing an incarceration sentence for a first technical violation). Most directly, in *Lane v. Commonwealth*, 82 Va. App. 658 (2024), this Court reversed a sentence where the circuit court deliberately disregarded the statutory prohibition and imposed incarceration for a first technical violation. *Id.* at 665-66. Matheson's case is not significantly different; even if the circuit court proceeded under a mistaken view of the law, its disregard of the statute transformed the sentencing decision from an exercise of discretion into plain legal error.

CONCLUSION

For the foregoing reasons, we reverse Matheson's six-month revocation sentence and remand with instructions to impose a sentence of no incarceration and refund the unauthorized jail admission fee of $25, and for further proceedings consistent with this opinion.

*Reversed and remanded.*